UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN NOLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-00228-TWP-DML |
| ) | |
| LOWE'S HOME CENTERS, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Motion for Summary Judgment (Filing No. 29) filed by Defendant Lowe's Home Centers, Inc. ("Lowes"). On February 17, 2014, Plaintiff, John Noland ("Mr. Noland"), filed a complaint alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") as well as several state law tort claims. On December 23, 2014, the parties stipulated and the Court granted a motion to dismiss Mr. Noland's tort claims. (Filing No. 26; Filing No. 27.) Lowes moved for summary judgment on the remaining claims. For the following reasons, the Court **GRANTS** Lowes' motion for summary judgment.

**I. BACKGROUND**

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

For security purposes, Lowes only permits certain managers to have "master keys" that are able to unlock any door to the store. To further enhance security, Lowes published a policy that prohibited key-carrying managers from handing out their keys to other employees for any purpose.

The policy specifically provided that any key-carrying Lowes manager who gave away their keys would be subject to discipline, including potential termination. A violation of the policy constituted a "Class A infraction", which could result in immediate termination regardless of whether an employee had any active discipline on file[1].

In October 2000, Mr. Noland, who was then 47 years old, was hired as a Delivery Driver for the Lowes store in Richmond, Indiana. In May 2001, Lowes promoted him to a Department Manager position. While working for Lowes, Mr. Noland transferred between several manager positions, and he remained a manager until the time of his discharge. From 2009 until his termination in April 2013, Mr. Noland worked as the Delivery Department Manager. Mr. Noland was responsible for, among other things, ensuring store safety and security and was one of only a few managers who was given a set of master keys. In June 2011, Chad Cole ("Mr. Cole") became Store Manager at Lowes, overseeing Mr. Noland and all other store managers.

On July 27, 2012, an outside gate to Lowes' "Lawn & Garden Area" was left unlocked. Shortly thereafter, Lowes' Human Resources Manager, Omar Khan ("Mr. Khan"), investigated whether Mr. Noland had given his set of master keys to an associate in violation of Lowes' policy. Pursuant to this investigation, Mr. Khan confirmed that Mr. Noland had given his keys to delivery driver Chad Larsh ("Mr. Larsh"), an hourly employee, and allowed Mr. Larsh to use the keys without Mr. Noland's supervision. Mr. Noland later admitted to giving away his keys and to knowing it was a violation of Lowes' policy; and Mr. Noland promised to not give away his keys again. Mr. Cole, Mr. Khan, and Area Human Resources Manager, Nicholas Caughell ("Mr. Caughell"), decided to issue Mr. Noland a final warning for the violation. In the written final

---

[1] Lowes maintains a progressive discipline policy, which includes four steps: (1) Initial Warning; (2) Written Warning; (3) Final Warning; and (4) Termination. Steps can be skipped depending on the severity of misconduct, and disciplinary actions stay active on an employee's file for one year.

warning, Mr. Noland was informed that further violations of Lowes' policies could result in his termination. Mr. Noland was 59 years old at that time.

In late February or early March 2013, Mr. Cole met with Mr. Noland for his annual compensation review to discuss a potential raise. Mr. Noland had already reached the top wage rate for his position and Mr. Cole gave Mr. Noland a 1% raise, the maximum percentage allowed. During the review, Mr. Cole informed Mr. Noland that he was doing well in terms of his performance. Thereafter, Mr. Cole asked Mr. Noland the following questions, "You just turned 60, didn't you? . . . How much longer are you going to work?" Mr. Noland responded that he planned to work until he was "67, as long as I got my health" and notes that the conversation ended after that. Mr. Noland was 60 years old at the time. Mr. Cole denies asking these questions.

On March 22, 2013, Store Loss Prevention Manager, Ryan Riggs ("Mr. Riggs"), noticed delivery drivers unlocking one of Lowes' outside gates with master keys, despite the fact that they were not key-carrying managers. After witnessing the event, Mr. Riggs spoke to Mr. Larsh, the same employee who Mr. Noland had improperly given his keys to in July 2012. Mr. Larsh informed Mr. Riggs that Mr. Noland had given him the keys to unlock the gate. As a result, the new Human Resources Manager, Joe Toman ("Mr. Toman"), conducted an investigation, wherein Mr. Noland admitted to the violation. However, Mr. Noland asserted that other managers also had violated the same policy, though Mr. Noland declined to give the names of specific individuals. In response to Mr. Noland's allegation, Mr. Toman interviewed all of Lowes' managers, who each denied giving out their keys or having knowledge of others having done so.

Mr. Noland also reported that Mr. Cole failed to investigate security and other policy violations by other managers at the store. On two separate occasions, Department Manager Shawn Pennington ("Mr. Pennington") opened the store and found that certain doors appeared to be

unlocked, which would be a violation of Store Policy if a manager from the night before failed to properly secure them. Mr. Pennington was not sure if a manager from the prior evening failed to secure the store or if an employee had unlocked that doors that morning. Regardless, Mr. Pennington reported the incidents to Mr. Cole. Mr. Noland does not believe these incidents were investigated by Mr. Cole.

Mr. Toman and Mr. Caughell evaluated the facts and determined that termination was warranted because Mr. Noland had been placed on a final warning for the same policy violation just eight months before. Accordingly, on April 2, 2013, Mr. Cole terminated Mr. Noland's employment because of repeated violations of Lowes' master key policy. Mr. Noland was 60 years old when his employment ended. Thereafter, on May 11, 2013, Mr. Cole promoted David Brewer, then 53 years old, to fill the vacant Delivery Manager position.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that, when the non-movant has the burden of proof on a substantive issue, specific forms of evidence

4

are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may, instead, grant such a motion, "so long as whatever is before the district court demonstrates that the standard . . . is satisfied."). *See also* Fed. R. Civ. P. 56(c)(1)(A) (noting additional forms of evidence used in support or defense of a summary judgment motion, including: "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials").

Thereafter, a nonmoving party, who bears the burden of proof on a substantive issue, may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Celotex Corp.*, 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some "metaphysical doubt" as to the material facts is sufficient to defeat a motion for summary judgment. *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997); *Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Similarly, a court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770

(7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490.  Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  *Id.*

### III. **DISCUSSION**

The ADEA prohibits employers from discriminating against employees who are forty years or older, on the basis of age.  29 U.S.C. §§ 623(a), 631(a); *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008.  A plaintiff alleging discrimination under the ADEA may prove age discrimination using either the direct method, by proffering direct or circumstantial evidence that age discrimination motivated the adverse employment decision, or the indirect, burden-shifting method.[2]  *Martino v. MCI Commc'ns Servs. Inc.*, 574 F.3d 447, 452 (7th Cir. 2009); *Ptasznik*, 464 F.3d at 695.  Under either method, however, a plaintiff must establish by a preponderance of evidence that age discrimination was the motivating factor for the adverse employment actions taken against him.  *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 173, 175-78 (2009) (holding that, unlike a Title VII case, a defendant's mixed-motives does not demonstrate discrimination in an ADEA case); *Martino*, 574 F.3d at 455 (noting that a plaintiff must prove that, "but for his age, the adverse action would not have occurred").

---

[2] Claims arising under the ADEA use the same legal standards for liability as Title VII.[2]  *See, e.g.*, *Atanus v. Perry*, 520 F.3d 662, 671-76 (7th Cir. 2008) (evaluating ADEA and Title VII discrimination claims under a single analysis); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695-98 (7th Cir. 2006) (same); *see also Vazquez v. Eli Lilly & Co.*, No. 1:12-cv-00139-TWP-DML, 2013 WL 5348542, at *7 (S.D. Ind. Sept. 24, 2013) (J. Pratt).  Accordingly, the Court cites cases involving either claim throughout the analysis interchangeably.

A.  **Direct Method**

Mr. Noland cannot factually establish that Lowes was motivated by a discriminatory animus against his age under the direct method of proof. The direct method requires a plaintiff to produce either direct evidence or a "convincing mosaic" of circumstantial evidence in order to prove that a defendant was motivated by animus toward a protected class when the plaintiff suffered an adverse employment action. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849 (7th Cir. 2008); *Martino*, 574 F.3d at 452; *Ptasznik*, 464 F.3d at 695.

Direct evidence establishes "the fact in question without reliance on inference or presumption." *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005); *Miller v. Ind. Univ. Health, Inc.*, No. 1:12-CV-1667-TWP, 2014 WL 4259628, at *4 (S.D. Ind. Aug. 29, 2014) (J. Pratt). *See also Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) ("[d]irect evidence would be an admission by the decisionmaker that the adverse employment action was motivated by discriminatory animus").

Alternatively, circumstantial evidence "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) ("circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action"); *Miller*, 2014 WL 4259628, at *4. Circumstantial evidence in employment discrimination cases typically comes in three categories, including: (1) evidence of suspicious timing, ambiguous oral or written statements, or behavior or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the

employer's reason is a pretext for discrimination. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012); *Hemsworth*, 476 F.3d at 491.

Under the direct method, Mr. Noland argues that the Mr. Cole's question regarding how much longer he planned on working, along with Mr. Cole's decision to terminate him a month later, suggest a discriminatory animus by Mr. Cole. The Seventh Circuit has repeatedly held that an "employer's suggestion of retirement [does] not alone give rise to an inference of discrimination." *Pitasi v. Gartner Grp., Inc.*, 184 F.3d 709, 715 (7th Cir. 1999); *Halloway v. Milwaukee Cty.*, 180 F.3d 820, 825 (7th Cir. 1999); *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997). *See also Rhodes*, 359 F.3d at 504 ("circumstantial evidence . . . must point directly to a discriminatory reason for the employer's action").

Further, Mr. Noland provides no evidence to suggest that Mr. Cole's question was in any way causally related to his decision a month later to terminate Mr. Noland's employment based on the second violation of Lowes' master key policy. In this regard, the Seventh Circuit is also clear, "before seemingly stray workplace remarks will qualify as evidence of discrimination under the direct method of proof, the plaintiff must show that the remarks were related to the employment decision in question." *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403-04 (7th Cir. 1996) (affirming summary judgment for the defendant employer wherein the plaintiff failed to establish a causal connection between a supervisor's statement, made six months before the plaintiff's termination, that he preferred "young people fresh out of college" and the employer's termination decision for disciplinary reasons); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1063 (7th Cir. 2003) (affirming summary judgment for the defendant employer wherein the plaintiff failed to establish a causal connection between the employer's characterization of a restructuring as "out with the old and in with the new" and a stray question asking the plaintiff "how's the old man doing today",

and the employer's termination decision because of the restructuring). *See also Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002) (holding that allegedly discriminatory remarks, made approximately two months before the plaintiff's termination, were not contemporaneous with the decisional process and, therefore, did not constitute circumstantial evidence of discriminatory animus); *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989) (noting that allegedly discriminatory remarks, when not made in relation to the decisional process, are insufficient to demonstrate that the defendant employer acted on a discriminatory animus).

Without more designated evidence, Mr. Noland cannot demonstrate a causal connection between the single stray comment regarding retirement and Mr. Cole's decision, a month later, to terminate Mr. Noland's employment for Mr. Noland's second violation of Lowes' policies. Accordingly, Mr. Noland has failed to present sufficient direct evidence of age discrimination.

**B.** **Indirect Method**

In addition, Mr. Noland cannot factually establish that Lowes was motivated by a discriminatory animus against his age under the indirect method of proof. If a plaintiff cannot present evidence of discrimination under the direct method, he may pursue his claim using the indirect method. *Martino*, 574 F.3d at 452; *Ptasznik*, 464 F.3d at 696. *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under the indirect method of proof, a *prima facie* case of discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a "similarly situated" employee under forty years old or a "similarly situated" and "substantially younger" employee. *Martino*, 574 F.3d at 453; *Tubergen*, 514 F.3d at 470 n.4; *Ptasznik*, 464 F.3d at 696.

To establish the *prima facie* case, a plaintiff must raise a genuine issue of material fact for each element. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 798 (7th Cir. 1995); *Grady v. Affiliated Comput. Servs. ACS*, No. 1:13-cv-00342-TWP-MJD, 2015 WL 1011355, at *4 (S.D. Ind. Mar. 4, 2015) (J. Pratt).

Once the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007); *Grady*, 2015 WL 1011355, at *4. If the defendant does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the defendant's explanation is pretextual. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Grady*, 2015 WL 1011355, at *4.

Lowes does not dispute that Mr. Noland was within the protected age class or that Mr. Noland's termination constitutes an adverse employment action. Accordingly, the first and third prongs of Mr. Noland's *prima facie* case are easily satisfied. However, Lowes argues that Mr. Noland cannot establish the remaining two prongs of the *prima facie* case and that Mr. Noland cannot demonstrate that Lowes' stated justification for his termination was pretextual.

### 1. **Legitimate Expectations**

To meet the second element, a plaintiff must establish that he was performing his job to the employer's legitimate expectations at the time of the adverse employment action. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328-29 (7th Cir. 2002).

In this regard, Lowes notes that Mr. Noland twice violated its master key policy within a period of eight months. Lowes argues that a single violation of the policy could have justified Mr. Noland's immediate termination, and that it gave Mr. Noland a second chance to reform his actions, albeit with a final warning in his employment file. Mr. Noland admits both violations of

the policy and offers no evidence to refute Lowes' contention that even a single violation of the master key policy justified his termination under Lowes' disciplinary policies. Accordingly, under the undisputed facts, no reasonable jury can conclude that Mr. Noland was meeting Lowes' legitimate expectations at the time he was terminated.

### 2. Treatment of Similarly Situated Employees

Even if Mr. Noland were able to meet the third element, he has not established that he was treated worse than a similarly situated employee. A plaintiff must establish by a preponderance of the evidence that he was treated less favorably than either a "similarly situated" employee outside of his protected class or a "similarly situated" and "substantially younger" employee. *Martino*, 574 F.3d at 453; *Tubergen*, 514 F.3d at 470 n.4 (noting that, for purposes of the ADEA, a presumptively "substantially younger" employee need not be under the age of forty but must, instead, be at least ten years younger than the plaintiff); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659-60 (7th Cir. 2001).

Under either approach, a plaintiff must proffer a similarly situated, younger employee who has a "comparable set of failings" as the plaintiff but was treated more favorably. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642-43 (7th Cir. 2008). *See also Warren v. Solo Cup Co.,* 516 F.3d 627, 630-31 (7th Cir. 2008) (noting that a "similarly-situated" comparator is someone, not of the protected class, who is directly comparable to the plaintiff in all material aspects). In the usual case, a plaintiff must show that the comparators dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without any differentiating circumstances to distinguish their conduct or their employer's treatment of them. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000); *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) ("[a] meaningful comparison is one which serves to eliminate confounding variables, such

as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints of discrimination"); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2006) (noting that the central question is whether a plaintiff and his colleagues engaged in conduct of comparable seriousness but received dissimilar treatment).

Mr. Noland argues, without evidentiary support, that several other key-carrying managers gave their master keys away in violation of Lowes' policy but were not terminated. Specifically, Mr. Noland identifies co-workers, Jim Thalls[3], Jassen Martin, Nick Goble, and Chad Lear, as also having violated the master key policy. This argument fails, however, because Mr. Noland failed to present any evidence to support his assertion that the identified employees actually violated the master key policy. Indeed, contrary to Mr. Noland's unsupported assertions, Lowes presented evidence that its Human Resources Manager, Mr. Toman, conducted an investigation at the same time as Mr. Noland's termination and found no other key-carrying managers to be in violation of the master key policy. Further, Lowes also presented evidence that, contrary to Mr. Noland's unsupported assertions, Mr. Cole also investigated several instances of unlocked store doors in 2012 but did not find any clear violations of Lowes' policies.

Accordingly, by merely making blanket assertions without citing to evidence to demonstrate a factual dispute, Mr. Noland has failed to meet his burden under Fed. R. Civ. P. 56(c)(1). Fed. R. Civ. P. 56(c)(1) ("[a] party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by . . . citing to particular parts of materials in the record") (emphasis added); S.D. Ind. L.R. 56-1(b) ("[a] party opposing a summary judgment motion *must* . . . file . . .

---

[3] Even assuming Mr. Noland could present evidence to substantiate his assertions, Mr. Noland cannot establish that Jim Thalls was either outside the protected class or "substantially younger", as he is only three years younger than Mr. Noland.

any evidence (that is not already in the record) that the party relies on to oppose the motion") (emphasis added). Consequently, Mr. Noland cannot establish that he was treated less favorably than a similarly situated employee.

Because Mr. Noland cannot factually demonstrate either that he was meeting Lowes' legitimate expectations at the time of his termination or that a similarly situated employee was treated more favorably for the same behavior, he cannot establish a *prima facie* case of age discrimination.

### 3. Non-Discriminatory Justification and Pretext

Nevertheless, even assuming, *arguendo,* that Mr. Noland could establish a *prima facie* case of discrimination, he cannot establish that Lowes' asserted reason for terminating his employment, namely Mr. Noland's repeated violations of the master key policy, was pretextual. Once the defendant employer asserts a non-invidious explanation for its employment decisions, the plaintiff must then present sufficient evidence to show that the employer's explanation is merely pretextual. *Martino*, 574 F.3d at 453; *Keeton*, 667 F.3d at 884.

Pretext means "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *Faas*, 532 F.3d at 642. Accordingly, the question is not whether the employer's explanation for its employment decision was "accurate, wise, or well-considered", but whether the employer's explanation was "honest". *Ptasznik*, 464 F.3d at 696. While the Court is not in the position to "sit as a superpersonnel department that will second guess an employer's business decision . . . [the Court] need not abandon good reason and common sense in assessing an employer's actions." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001); *Miller*, 2014 WL 4259628, at \*6.

A plaintiff can demonstrate that the defendant employer's explanations are pretextual either directly, by showing that "a discriminatory reason more likely motivated" the employer's actions, or indirectly, by showing that the employer's explanations are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision. *Id.*; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (noting that a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons that a reasonable person could find them not credible).

Mr. Noland presents no evidence or argument that he was terminated for any reason other than violating Lowes' master key policy a second time. As such, no reasonable jury could conclude that Lowes' purported reason for his termination was a lie. In particular, Lowes notes that the decision to terminate Mr. Noland was made because of his second violation of the policy in a span of eight months and that Mr. Noland had received a final warning after his first violation. Further, Lowes notes that the termination decision, though made by Mr. Cole, was influenced by the initial and independent review of Mr. Toman and Mr. Caughell. Although he makes an assertion in his brief that Lowes' master key policy was not consistently enforced, Mr. Noland provided no evidence to support his assertion that this was actually the case. Finally, Lowes points out that Mr. Cole replaced Mr. Noland's Delivery Manager position with another employee in the protected class, additionally vitiating any inference of pretext. Accordingly, Mr. Noland also cannot establish that Lowes' asserted reason for terminating his employment was pretextual, further impeding his ability to prove discrimination under the indirect method of proof.

Consequently, because Mr. Noland cannot establish a claim of age discrimination under either the direct or indirect method of proof, summary judgment is warranted in Lowes' favor.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Lowes' Motion for Summary Judgment with respect to the remaining ADEA claim. ([Filing No. 29](#).) Final judgment will be issued by a separate order.

**SO ORDERED.**

Date: 1/15/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kathleen M. Anderson
BARNES & THORNBURG
kathleen.anderson@btlaw.com

David J. Pryzbylski
BARNES & THORNBURG LLP
dpryzbylski@btlaw.com

Peter Abernethy Morse, Jr.
BARNES & THORNBURG LLP
pmorse@btlaw.com

Joel S. Paul
LAW OFFICES OF SWARAY CONTEH
lawjoel@hotmail.com